# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREGORY MILAN, ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| v. ) | |
| ) | COMPLAINT FOR VIOLATION OF |
| ) | CIVIL RIGHTS AND A |
| CITY OF CHICAGO POLICE ) | SUPPLEMENTAL STATE CLAIM |
| OFFICERS DETECTIVE ANTHONY ) | |
| SCHULZ, STAR NO. 887, MARCO ) | **JURY DEMANDED** |
| PROANO, STAR NO. 9477, AND ) | |
| MICHAEL MITCHEL, STAR NO. 6099 ) | |
| and UNKNOWN AND UNNAMED ) | |
| CITY OF CHICAGO POLICE ) | |
| OFFICERS, AND THE CITY OF ) | |
| CHICAGO, ) | |
| | |
| Defendants. | |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff Gregory Milan ("Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this court.

4. At all times herein mentioned, Defendants City of Chicago Police Officers/Detectives Anthony Schulz, star no. 887 ("Schultz"), Marco Proano, star no. 9477 ("Proano"), and Michael Mitchel, star no. 6099 ("Mitchel") ("individual defendants" or "police

1

defendants") and unknown and unnamed officers were employed by the City of Chicago Police Department were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

5. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

6. On or about June 8, 2012, Plaintiff was lawfully in his mother's residence located in Chicago, Cook County, State of Illinois.

7. On that day and place, the individual Defendants arrived to the residence where Plaintiff was located allegedly based upon a dispatch of a "shots fired" call.

8. The Defendants came to the door where Plaintiff was located and contacted the Plaintiff. The Plaintiff, who was unarmed was detained.

9. Thereafter, the Defendants searched the residence where Plaintiff was located without legal cause.

10. The Defendants located a gun in a basement crawl space of the house. They also allegedly recovered a holster.

11. Plaintiff was arrested and transported to the police station.

12. At the police station, Defendant Schulz claimed that he Mirandized the Plaintiff who then allegedly said as follows: "he got the gun from on top of a kitchen cabinet, he pointed it at [2

persons who had been in the residence], he pointed it at them, and told them to get the fuck away from him."

13. The statement set forth in the previous paragraph was fabricated. Plaintiff did not say that or anything remotely similar to that to any Police Officer or Detective.

14. The Defendants also omitted other material things and fabricated other things, including that they found a holster on top of the television in the residence.

15. There was no probable or legal cause to arrest and prosecute the Plaintiff.

16. Plaintiff was charged with, among other charges, 2 counts of unlawful possession of a weapon with a firearm. He was found guilty of this charge in a bench trial on May 11, 2017 and sentenced to 6 years imprisonment.

17. Plaintiff was imprisoned on these charges.

18. Thereafter, the Plaintiff undertook an appeal of the guilty verdict and on September 30, 2020, the Appellate Court reversed his conviction.

19. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained additional injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering in an amount to be ascertained.

20. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

21. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff

requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**COUNT I**
**WRONGFUL DETENTION**
**PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS**

22. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

23. In the manner described above, Defendants seized and unlawfully arrested and prosecuted the Plaintiff without probable cause or any lawful justification, in violation of the Fourth Amendment to the U.S. Constitution.

24. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

25. Plaintiff's arrest, imprisonment, and the finding of him guilty, until his conviction was reversed, was due to the actions of all the individual Defendants in that they worked with one another to fabricate a confession, they fabricated evidence in their police reports, they omitted and did not turn over material exculpatory evidence, and Defendant Schulz perjured testimony during the underlying criminal trial.

26. Further, to the extent that any Defendant did not directly participate in the unlawful actions described above, this Defendant(s) is liable for failing to protect the Plaintiff from the unlawful acts of other Defendants despite the reasonable ability to do so.

27. As a result of this misconduct, Plaintiff was injured, including a loss of liberty, emotional distress, and attorneys' fees.

## COUNT II
## VIOLATION OF DUE PROCESS
## PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS

28. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

29. As described more fully above, all of the Defendants, acting individually, jointly, and/or in a conspiracy, to deprive Plaintiff of his constitutional right to due process and right to a fair trial.

30. In the manner described more fully above, the Defendants fabricated false inculpatory statements, failed to turn over exculpatory evidence falsified police reports and gave perjured testimony, thereby causing the wrongful prosecution of Plaintiff. Absent this misconduct, the criminal prosecution could not and would not have been pursued.

31. The Defendants misconduct directly resulted in the unjust criminal prosecution and continuing wrongful incarceration of Plaintiff while he awaited trial in the Circuit Court of Cook County, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

32. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress, and anguish.

33. The misconduct described in this count was objectively unreasonable and undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

5

## COUNT III
## PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS AND THE CITY OF CHICAGO FOR MALICIOUS PROSECUTION

34. Plaintiff hereby incorporates and realleges all the previous paragraphs as though fully set forth at this place.

35. The individual defendants commenced and caused there to be continued a criminal prosecution of the Plaintiff.

36. The individual defendants fabricated a confession, falsified reports against the Plaintiff and concealed exculpatory evidence, among other things, in causing and prosecuting criminal prosecution of Plaintiff.

37. The underlying criminal charges terminated in Plaintiff's favor in that his conviction was reversed on September 30, 2020.

38. The individual defendants acted with malice in doing the acts described above.

39. Plaintiff was damaged as a result of being maliciously prosecuted as he suffered a loss of liberty, payment of attorneys' fees for the underlying criminal case and suffered emotional distress in a sum to be ascertained.

40. The City of Chicago is liable to Plaintiff under the concept of *respondeat superior.*

41. As a result of the foregoing, all defendants are liable to the Plaintiff for malicious prosecution.

**COUNT IV**
**PLAINTIFF AGAINST THE CITY OF CHICAGO FOR**
***MONELL* LIABILITY**

42.     Plaintiff incorporates and realleges all the previous paragraphs as though they were fully set forth at this place.

43.     The misconduct of the Chicago Police Department Detectives and Police Officers described above was undertaken because of and pursuant to the practice of the Chicago Police Department.  As a matter of custom and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

44.     As a matter of practice, prior to Plaintiff's arrest, the Chicago Police Department facilitated the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the OPS, Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

45.     In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

       a. The City of Chicago's accountability systems for Chicago Police Officers contribute to a pattern or practice of unconstitutional conduct;

7

Case: 1:21-cv-00765 Document #: 1 Filed: 02/10/21 Page 8 of 11 PageID #:8

b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

c. Investigations into police misconduct are neither fair nor complete;

d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct;

e. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct; and

f. The Chicago Police Department has numerous entrenched, systemic policies and practices that undermine police accountability,

46. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

47. Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015 Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

48. On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?

Answer: The short answer is, yes.

49. CPD's pattern of unlawful conduct is also due to deficiencies in CPD's training and supervision. CPD does not provide officers or supervisors with adequate training and does not encourage or facilitate adequate supervision of officers in the field. These shortcomings in training and supervision result in officers who are unprepared to police lawfully and effectively; supervisors

8

who do not mentor or support constitutional policing by officers; and a systemic inability to proactively identify areas for improvement, including Department-wide training needs and interventions for officers engaging in misconduct.

50. The individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any significant discipline against them.

51. Defendant Anthony Schulz has had a least 91 allegations of misconduct complaints filed against him, and not one has been sustained, and he has never been disciplined by the City of Chicago for any citizen complaint.

52. Defendant Marco Bruno has had at least 28 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

53. Defendant Michael Mitchell has had at least 16 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

54. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

55. Prior to Plaintiff's arrest, the City of Chicago failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

56. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, OPS, IPRA and/or COPA will not consider those allegations if they are deemed unsustained.

57. Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

58. Plaintiff alleges that these customs, policies, and practices, described above, were the moving force behind the violations of the Plaintiff's rights. Based upon the principles set forth in <u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to Plaintiff as set forth above.

**WHEREFORE,** the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That the individual Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiff's special damages;

3. That these same Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the Defendants other than City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff have such other and further relief as this Court may deem just and proper.

BY: s/ Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiff
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: s/ Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiff
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efoxlaw.com