IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY MILAN, | |
| Plaintiff, | No. 21-cv-00765 |
| v. | Judge John F. Kness |
| ANTHONY SCHULZ, MARCO PROANO, MICHAEL MITCHEL, UNKNOWN AND UNNAMED CITY OF CHICAGO POLICE OFFICERS, and THE CITY OF CHICAGO, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

After his conviction for unlawful possession of a firearm was reversed by an Illinois court, Plaintiff Gregory Milan filed this action under 42 U.S.C. § 1983 against certain Chicago police officers involved in his arrest. Presenting claims for wrongful detention, violation of due process, and malicious prosecution, Plaintiff alleges that the Defendant Officers arrested Plaintiff without probable cause, fabricated his confession, and withheld other evidence. Plaintiff also seeks to hold the City of Chicago liable under a theory of respondeat superior, and separately under the *Monell* doctrine. Plaintiff complains that the Defendant Officers' misconduct was caused in part by the City's custom and practice of failing adequately to punish and discipline other instances of similar misconduct, as well as by its general failure to train officers properly. The City has moved to dismiss Plaintiff's *Monell* claim

(Count IV).

As explained below, Plaintiff's complaint fails to state a viable *Monell* claim against the City. Plaintiff does not define the custom or practice, link such custom or practice to his own alleged constitutional deprivations, or adequately plead other similar instances of misconduct. Absent factual content to support the complained-of custom or practice, Plaintiff fails to put the City on notice of the claim against it. Accordingly, the City's partial motion to dismiss is granted.

## I. BACKGROUND

On June 8, 2012, Defendants Schulz, Proano, and Mitchel, all employed by the Chicago Police Department at relevant times (collectively the "Defendant Officers"), responded to a call about shots fired at the residence of Plaintiff's mother. (Complaint ("Compl."), Dkt. 1 ¶¶ 6–7.) The Defendant Officers arrived at the residence, conducted a search, and located a gun and holster in the basement crawl space of the house. (*Id.* ¶¶ 8–10.) Plaintiff, who was present at the residence, was then arrested and transported to the police station. (*Id.* ¶ 11.) At the police station, as recorded in Defendant Schulz's report, Plaintiff admitted that he "got the gun from on top of a kitchen cabinet, [] pointed it at [2 persons who had been in the residence], . . . and told them to get the f[***] away from him." (*Id.* ¶ 12.) Based on that admission, an Illinois judge, following a bench trial, convicted Plaintiff of two counts of unlawful possession of a firearm and sentenced him to six years in prison. (*Id.* ¶ 16.) Based on its conclusion that there was insufficient evidence of guilt, the Illinois Appellate Court later reversed Plaintiff's conviction. (*Id.* ¶ 18); *Illinois v. Milan*, 170 N.E.3d 980

2

(Ill. App. Ct. 2020).

Plaintiff now asserts that the Defendant Officers involved in his arrest fabricated Plaintiff's admission, omitted "material things," and "fabricated other things," including that they "found a holster on top of the television in the residence." (Compl. ¶¶ 12–14, 25.) Based on that conduct, Plaintiff brings civil rights claims under 42 U.S.C. § 1983 against the Defendant Officers for wrongful detention (Count I), violation of due process (Count II), and malicious prosecution (Count III). (*Id.* ¶¶ 22−41.) Plaintiff also alleges that the City is liable for malicious prosecution in Count III under a theory of respondeat superior and is separately liable under *Monell* (Count IV). (*Id.* ¶¶ 1, 42–58.)

In support of his *Monell* claim, Plaintiff alleges the following:

- "As a matter of custom and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference." (*Id.* ¶ 43.)

- "As a matter of practice, prior to Plaintiff's arrest, the Chicago Police Department facilitated the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the OPS, Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens." (*Id.* ¶ 44.)

- "In January 2017, the U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department [which] included the following findings:

    a. The City of Chicago's accountability systems for Chicago Police Officers contribute to a pattern or practice of unconstitutional conduct;

3

- b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;
- c. Investigations into police misconduct are neither fair nor complete;
- d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct;
- e. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct; and
- f. The Chicago Police Department has numerous entrenched, systemic policies and practices that undermine police accountability." (*Id.* ¶ 45.)

- "The Chicago Police Department has a widespread 'code of silence' wherein police officers will not report misconduct committed by fellow officers . . . [and] on December 8, 2015 Rahm Emmanuel [sic], Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence." (*Id.* ¶¶ 46–47.)

- "CPD's pattern of unlawful conduct is also due to deficiencies in CPD's training and supervision. CPD does not provide officers or supervisors with adequate training and does not encourage or facilitate adequate supervision of officers in the field. These shortcomings in training and supervision result in officers who are unprepared to police lawfully and effectively; supervisors who do not mentor or support constitutional policing by officers; and a systemic inability to proactively identify areas for improvement, including Department-wide training needs and interventions for officers engaging in misconduct." (*Id.* ¶ 49.)

- "The individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any significant discipline against them," including at least "91 allegations of misconduct" against Defendant Schulz, "at least 28 misconduct complaints" against Defendant Bruno, and "at least 16 misconduct complaints" against Defendant Mitchel. (*Id.* ¶¶ 50–53.)

- "As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, OPS, IPRA and/or COPA will not consider those allegations if they are deemed unsustained." (*Id.* ¶ 56.)

- "Plaintiff alleges that these customs, policies, and practices, described above, were the moving force behind the violations of the Plaintiff's rights." (*Id.* ¶ 58.)

4

The City now moves to dismiss Count IV of Plaintiff's complaint. (Dkt. 17.)

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality may only be held liable for conduct that the municipality has officially sanctioned or ordered. To state a valid *Monell* claim, Plaintiff must plausibly allege that the violation of his constitutional rights was caused by: (1) an express municipal policy; (2) a widespread practice that amounted

5

to a custom approaching the force of law; or (3) a person with final policymaking authority. *Glisson v Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

A plaintiff may also take an "alternative path to *Monell* liability" by alleging that the need for more or different training is "so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). This is otherwise known as a failure-to-train theory of liability. *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Although the Supreme Court in *Harris* "did not absolutely foreclose the possibility that a plaintiff might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations," a plaintiff relying on a failure-to-train theory must nevertheless eventually "provide enough evidence of custom and practice to permit an inference that the [municipal entity] has chosen an impermissible way of operating." *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005).

That said, the Supreme Court has "made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. Coordination Unit*, 507 U.S. 163, 164 (1993)). Indeed, the Seventh Circuit allows a "conclusory" *Monell* claim to survive a motion to dismiss when it is "sufficient to put the City on notice of [plaintiff's] claim against it" and does not "[leave] out facts necessary to give the defendants a complete

6

understanding of the claims made against them." *Id.* at 325. To withstand a motion to dismiss a *Monell* claim, Plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that led to Plaintiff's constitutional injuries. *McCauley v. City of Chicago*, 671 F. 3d 611, 616 (7th Cir. 2011) (cleaned up).

Plaintiff's *Monell* claim appears to rely on widespread practice and failure-to-train theories of liability. (*See e.g.,* Compl. ¶ 43 ("As a matter of custom and practice. . . ."); *id.* ¶ 49 ("CPD's pattern of unlawful conduct is also due to deficiencies in CPD's training and supervision").) For the following reasons, both theories of liability fail.

   1. *Plaintiff fails to plausibly allege a Monell claim based on a widespread practice theory*

To determine whether a plaintiff has sufficiently pleaded a widespread practice theory of liability, the Court must look to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). Although a plaintiff is not required to identify "every other or even one other individual" who suffered the same constitutional violation as a result of the complained-of practice, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), the claim "requires more evidence than a single incident to [eventually] establish liability," *Calhoun*, 408 F.3d at 380. The widespread practice must "permeate[] a critical mass of [the] institutional body." *Rossi v. City of Chicago*,

790 F.3d 729, 737 (7th Cir. 2015). Misbehavior by one official is relevant only where "it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Even viewed in the light most favorable to Plaintiff, the complaint's allegations fail to establish a widespread practice or policy akin to Plaintiff's alleged deprivations. As an initial matter, Plaintiff does not identify the complained-of widespread policy or practice. Plaintiff alleges only that the City "encourage[d] the very type of misconduct at issue here," "facilitated the type of misconduct at issue," and "directly encourage[ed] future abuses such as those affecting Plaintiff." (Compl. ¶¶ 43–44.) But these are "broad accusations of misconduct" that are "not tailored to identify particular police training procedures or policies." *Jones v. Hunt*, 2020 WL 814912, at *3 (N.D. Ill. Feb. 19, 2020) (citation omitted). By failing to describe or otherwise articulate the specific custom or practice that caused Plaintiff's constitutional injury, Plaintiff's complaint fails to put the City on notice of the *Monell* claim against it. *See McCormick*, 230 F.3d at 325.

Plaintiff attempts to support his *Monell* claim by citing a 2017 Department of Justice Report (Compl. ¶ 45), the former Mayor Rahm Emanuel's acknowledgement of a "code of silence" in the Chicago Police Department (*id.* ¶¶ 46–48), and the complaints previously filed against the Defendant Officers (*id.* ¶¶ 50–53). For the following reasons, however, these references do not remedy the deficiency of Plaintiff's claim.

*First*, Plaintiff relies on the 2017 DOJ Report's general findings that the Chicago Police Department has "a pattern or practice of unconstitutional conduct"

8

and "numerous entrenched, systemic policies and practices that undermine police accountability." (*Id.* ¶ 45.) But Plaintiff does not cite to any specific facts in that Report or tie those facts to his claims of unlawful arrest, fabrication, and withholding of evidence. Having reviewed the 2017 DOJ Report,[1] it is not clear how the Report's findings relate to Plaintiff's *Monell* claim; the Report focused on police officer shootings and the City's oversight of officers' use of force, which are not at issue in this case.

In any event, the Court has no obligation to "dig through the Report in search of specific items that may support [Plaintiff's] *Monell* claim." *Jones v. Barber*, 2020 WL 1433811, at *6 (N.D. Ill. Mar. 24, 2020) (cleaned up); *Carmona v. City of Chicago*, 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018) ("Plaintiff's broad citation to the 160-page [2017] DOJ report, without any discussion of the specific findings of the report or any allegations connecting the report findings to the misconduct alleged in his Complaint, is insufficient to support his *Monell* claim."); *see also Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994) ("District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits."). Plaintiff's

---

[1] The City attached the 2017 DOJ Report, which Plaintiff expressly cites and describes in his complaint, to its motion to dismiss. (*See* Dkt. 17-2; Compl. ¶ 45.) It is "well settled that, in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quotation omitted). That incorporation-by-reference doctrine "provides that[,] if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Id.* That prevents a plaintiff from "evad[ing] dismissal . . . simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (citation omitted).

9

reliance on the 2017 DOJ Report thus does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

*Second*, Plaintiff alleges that the City maintained a widespread practice referred to as the "code of silence" under which officers do not report other officers' misconduct. (Compl. ¶ 46.) To support this allegation, Plaintiff quotes former Mayor Emanuel from a December 2015 television interview in which the former Mayor admitted that a "code of silence exists among Chicago police officers." (*Id.* ¶ 48.) But "Mayor Emanuel's statement was made in the context of an excessive force case involving a police shooting," *Page v. City of Chicago*, 2021 WL 365610, at *3 (N.D. Ill. Feb. 3, 2021)—which, again, is not at issue here.

Regardless of the context of Mayor Emanuel's statement, it is not clear how the City's supposed "code of silence" relates to the facts alleged in this case. Plaintiff only broadly claims that the City's "customs, policies, and practices," including the "code of silence," were "the moving force behind the violations of Plaintiff's rights." (Compl. ¶ 58.) But such legal conclusions may be disregarded on a motion to dismiss. *McCauley*, 671 F.3d at 617–18. What remains is a nebulous nexus between the former Mayor's statement and Plaintiff's *Monell* claim. Put another way, Plaintiff's allegations about the implication of Mayor Emanuel's statements is insufficient "to nudge [Plaintiff's] claim . . . across the line from conceivable to plausible." *Id.* at 618 (cleaned up).

*Third*, Plaintiff recites the number of citizens' complaints filed against the Defendant Officers "without the City of Chicago implementing any significant

10

discipline against them." (Compl. ¶ 50.) But Plaintiff does not specify the nature of the misconduct complaints or explain how those complaints—apparently none of which was sustained (Compl. ¶¶ 50–53)—relate to his injury. Merely alleging that many complaints have been filed against the Defendant Officers does not, by itself, allow the Court "to draw the reasonable inference that the City maintained a policy, custom or practice" of unlawful arrests, fabrication of evidence, and withholding of evidence, or that the City had knowledge of the Defendant Officers' alleged misconduct here. *McCauley*, 671 F.3d at 616 (cleaned up); *see Boone v. City of Chicago*, 2018 WL 1014509, at *1–2 (N.D. Ill. Feb. 22, 2018) (dismissing *Monell* claim where plaintiffs failed to allege the subject matter of the complaints); *Thomas v. City of Markham*, 2017 WL 4340182, at *4 (N.D. Ill. Sept. 29, 2017) ("[A]llegations of general past misconduct or allegations of dissimilar incidents are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences."). Without tying the Defendant Officers' conduct to a policy of custom of the department, Plaintiff fails to provide the Court with a "basis to infer that the [C]ity was responsible for any constitutional violation." *Nelson v. City of Chicago*, 992 F.3d 599, 606 (7th Cir. 2021).

Plaintiff also asserts that, as "a matter of express policy," the City "refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint." (Compl. ¶ 56.) In doing so, however, Plaintiff does not identify an actual policy that "explicitly violates a constitutional right when enforced." *Calhoun*, 408 F.3d at 379. For example, Plaintiff

11

does not allege that the City has a policy of conducting unlawful arrests, fabricating evidence, or withholding evidence. Plaintiff's allegations are "simply too vague and unclear" to support a plausible inference that the City maintains a widespread practice that caused Plaintiff's injury. *Page*, 2021 WL 365610, at *2. Overall, the complaint leaves out "facts necessary to give [the City] a complete understanding" of the claim made against it. *McCormick*, 230 F.3d at 325. Plaintiff's claim thus fails to allege plausibly a widespread practice theory of *Monell* liability.

> *2. Plaintiff fails to plausibly allege a Monell claim based on a failure-to-train theory*

Both in widespread practice cases and in those complaining about gaps in express policies, "what is [ultimately] needed is evidence that there is a true municipal policy at issue, not a random event." *Calhoun*, 408 F.3d at 380. For Plaintiff to state sufficiently that the City's failure to adequately train its police officers amounted to a policy under *Monell*, therefore, Plaintiff must plausibly allege that "the [City's] inadequacies resulted from conscious choice—that is . . . [that] the policymakers deliberately chose a training program which would prove inadequate." *Id.* (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)). Put differently, to survive a motion to dismiss, Plaintiff must plausibly state that the City's "failure to act can reflect deliberate indifference." *J.K.J.*, 960 F.3d at 380.

To support a failure-to-train theory, Plaintiff relies only on the 2017 DOJ Report and boilerplate repetitions of the legal requirements of a *Monell* claim. Plaintiff alleges that the City "does not provide officers or supervisors with adequate training and does not encourage or facilitate adequate supervision of officers in the

12

field." (Compl. ¶ 49.) But Plaintiff does not define or otherwise specify what "adequate training" the City failed to provide, nor does he plead facts linking that failure to his injuries. Such a nexus is needed "to permit an inference that the [City] has chosen an impermissible way of operating." *Calhoun*, 408 F.3d at 381.

Plaintiff alleges that the City's shortcomings "result in officers who are unprepared to police lawfully and effectively; supervisors who do not mentor or support constitutional policing by officers; and a systemic inability to proactively identify areas for improvement, including Department-wide training needs and interventions for officers engaging in misconduct." (Compl. ¶ 49.) But such sweeping generalities fail to define what "patterns of abuse" the City allegedly failed to remedy—a showing that "is necessary to understand what the omission means." *Calhoun*, 408 F.3d at 380. Plaintiff's complaint thus does not "allow an inference of institutional culpability." *J.K.J.*, 960 F.3d at 380; *see Gallagher v. O'Connor*, 664 F. App'x 565, 569 (7th Cir. 2016) (nonprecedential disposition) (affirming dismissal of *Monell* claim where plaintiff "merely describe[d] the factual circumstances of his arrest and tack[ed] on boilerplate allegations that trace[d] the legal requirements of a *Monell* claim").

Plaintiff's reference to the 2017 DOJ Report does not overcome the complaint's factual deficiencies. As explained above, the 2017 DOJ Report focused on police shootings and officers' use of force. Plaintiff does not bring an excessive force claim and otherwise fails to allege how any of the deficiencies identified in the 2017 DOJ Report relate to his claim. *See Carmona*, 2018 WL 1468995, at *4 ("the [2017] DOJ

13

report certainly identifies serious shortcomings in CPD's supervisory systems, but the Court cannot countenance it as a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings").

Absent a "specific pattern or series of incidents required to support the general allegation of a custom or policy," *Nelson*, 992 F.3d at 607 (cleaned up), Plaintiff's *Monell* claim may only survive if the misconduct is "so obvious that the municipality's failure to act can reflect deliberate indifference," *J.K.J.*, 960 F.3d at 380. But the complaint's general allegations are insufficient to permit the Court to reach that inference. Taken as true, Plaintiff's specific constitutional deprivations do not rise beyond "a random event." *Calhoun*, 408 F.3d at 380. Plaintiff's claim is not plausible under a *Monell* failure-to-train theory of liability.

## IV.   CONCLUSION

Plaintiff has not pleaded enough facts to nudge his *Monell* claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, or to put the City on notice of the basis of that claim, *McCormick*, 230 F.3d at 325. Accordingly, the City's partial motion to dismiss Count IV (Dkt. 17) is granted. Because Plaintiff might be able to cure the complaint's shortcomings, this dismissal is without prejudice to Plaintiff's filing an amended complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."). Any motion for leave to file an amended complaint

14

must be submitted on or before June 20, 2022.

SO ORDERED in No. 21-cv-00765.

Date: June 2, 2022

JOHN F. KNESS
United States District Judge

15