IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY MILAN, ) | |
| ) | |
| Plaintiff, ) | Case No.: 21 cv 00765 |
| ) | |
| v. ) | |
| ) | |
| CITY OF CHICAGO POLICE ) | Judge F. Kness |
| OFFICERS DETECTIVE ANTHONY ) | |
| SCHULZ, STAR NO. 887, MARCO ) | |
| PROANO, STAR NO. 9477, AND ) | Magistrate Judge Gabriel A. Fuentes |
| MICHAEL MITCHEL, STAR NO. 6099 ) | |
| and UNKNOWN AND UNNAMED ) | |
| CITY OF CHICAGO POLICE ) | |
| OFFICERS, AND THE CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**PARTIES**

3. At all times herein mentioned, Plaintiff Gregory Milan ("Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this court.

4. At all times herein mentioned, Defendants City of Chicago Police Officers/Detectives Anthony Schulz, star no. 887 ("Schultz"), Marco Proano, star no. 9477

1

("Proano"), and Michael Mitchel, star no. 6099 ("Mitchel") ("individual defendants" or "police defendants") and unknown and unnamed officers were employed by the City of Chicago Police Department were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

5. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

6. On or about June 8, 2012, Plaintiff was lawfully in his mother's residence located in Chicago, Cook County, State of Illinois.

7. On that day and place, the individual Defendants arrived to the residence where Plaintiff was located allegedly based upon a dispatch of a "shots fired" call.

8. The Defendants came to the door where Plaintiff was located and contacted the Plaintiff. The Plaintiff, who was unarmed was detained.

9. Thereafter, the Defendants searched the residence where Plaintiff was located without legal cause.

10. The Defendants located a gun in a basement crawl space of the house. They also allegedly recovered a holster.

11. Plaintiff was arrested and transported to the police station.

12. At the police station, Defendant Schulz claimed that he Mirandized the Plaintiff who then allegedly said as follows: "he got the gun from on top of a kitchen cabinet, he pointed it at [2

persons who had been in the residence], he pointed it at them, and told them to get the fuck away from him."

13. The statement set forth in the previous paragraph was fabricated. Plaintiff did not say that or anything remotely similar to that to any Police Officer or Detective.

14. The Defendants also omitted other material things and fabricated other things, including that they found a holster on top of the television in the residence.

15. There was no probable or legal cause to arrest and prosecute the Plaintiff.

16. Plaintiff was charged with, among other charges, 2 counts of unlawful possession of a weapon with a firearm. He was found guilty of this charge in a bench trial on May 11, 2017 and sentenced to 6 years imprisonment.

17. Plaintiff was imprisoned on these charges.

18. Thereafter, the Plaintiff undertook an appeal of the guilty verdict and on September 30, 2020, the Appellate Court reversed his conviction.

19. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained additional injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering in an amount to be ascertained.

20. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

21. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff

requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
## WRONGFUL DETENTION
## PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS

22. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

23. In the manner described above, Defendants seized and unlawfully arrested and prosecuted the Plaintiff without probable cause or any lawful justification, in violation of the Fourth Amendment to the U.S. Constitution.

24. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

25. Plaintiff's arrest, imprisonment, and the finding of him guilty, until his conviction was reversed, was due to the actions of all the individual Defendants in that they worked with one another to fabricate a confession, they fabricated evidence in their police reports, they omitted and did not turn over material exculpatory evidence, and Defendant Schulz perjured testimony during the underlying criminal trial.

26. Further, to the extent that any Defendant did not directly participate in the unlawful actions described above, this Defendant(s) is liable for failing to protect the Plaintiff from the unlawful acts of other Defendants despite the reasonable ability to do so.

27. As a result of this misconduct, Plaintiff was injured, including a loss of liberty, emotional distress, and attorneys' fees.

## COUNT II
## VIOLATION OF DUE PROCESS
## PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS

28. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

29. As described more fully above, all of the Defendants, acting individually, jointly, and/or in a conspiracy, to deprive Plaintiff of his constitutional right to due process and right to a fair trial.

30. In the manner described more fully above, the Defendants fabricated false inculpatory statements, failed to turn over exculpatory evidence falsified police reports and gave perjured testimony, thereby causing the wrongful prosecution of Plaintiff. Absent this misconduct, the criminal prosecution could not and would not have been pursued.

31. The Defendants misconduct directly resulted in the unjust criminal prosecution and continuing wrongful incarceration of Plaintiff while he awaited trial in the Circuit Court of Cook County, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

32. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress, and anguish.

33. The misconduct described in this count was objectively unreasonable and undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

## COUNT III
### PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS AND THE CITY OF CHICAGO FOR MALICIOUS PROSECUTION

34. Plaintiff hereby incorporates and realleges all the previous paragraphs as though fully set forth at this place.

35. The individual defendants commenced and caused there to be continued a criminal prosecution of the Plaintiff.

36. The individual defendants fabricated a confession, falsified reports against the Plaintiff and concealed exculpatory evidence, among other things, in causing and prosecuting criminal prosecution of Plaintiff.

37. The underlying criminal charges terminated in Plaintiff's favor in that his conviction was reversed on September 30, 2020.

38. The individual defendants acted with malice in doing the acts described above.

39. Plaintiff was damaged as a result of being maliciously prosecuted as he suffered a loss of liberty, payment of attorneys' fees for the underlying criminal case and suffered emotional distress in a sum to be ascertained.

40. The City of Chicago is liable to Plaintiff under the concept of *respondeat superior*.

41. As a result of the foregoing, all defendants are liable to the Plaintiff for malicious prosecution.

## COUNT IV
### PLAINTIFF AGAINST THE CITY OF CHICAGO FOR *MONELL* LIABILITY

42. Plaintiff incorporates and realleges all the previous paragraphs as though they were fully set forth at this place.

43. The misconduct of the Chicago Police Department Detectives and Police Officers described above was undertaken because of and pursuant to the practice of the Chicago Police Department. As a matter of custom and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately investigate and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

44. As a matter of practice, prior to and including the time of Plaintiff's arrest, the Chicago Police Department facilitated the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the OPS, Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

45. The Chicago Police Department's faulty accountability systems contribute to a pattern and practice of unconstitutional conduct by Chicago Police Officers.

46. The accountability system has changed over time, but during the time period encompassed by the acts that are subject to this complaint and for a period of time at least 5 years prior and subsequent to the incident at issue in this complaint the entities tasked with investigating complaints against police officers included the Independent Police Review Authority (IPRA), the Civilian Office of Police Accountability (COPA), and the Bureau of Internal Affairs (BIA).

47. Previously IPRA, and starting in 2017 COPA, were/are both responsible for investigating various kinds of allegations including false arrests and unlawful searches.

Depending on the alleged circumstances, the Bureau of Internal Affairs may also investigate allegations of false arrest and unlawful searches.

48. The faulty accountability system is demonstrated statistically, in that the numbers of officers that were disciplined as a percentage of those who were alleged to have engaged in misconduct, were so low that police could not help being aware of those statistics and engaged in misconduct with little fear that there would be a consequence for their actions, thus leading to a custom, pattern and practice of violating the constitutional rights of citizens.

49. For at least 2 years prior to Plaintiff's arrest and 2 years subsequent, IPRA failed to conduct any investigation in over half of the complaints received. For example, between 2011 and 2014, 58% of complaints were not investigated.

50. For several years prior to Plaintiff's arrest, typically no investigations were conducted even when the City of Chicago settled claims against police officers for thousands of dollars. For example, from 2009 through 2015 the City of Chicago settled hundreds of lawsuits alleging misconduct against police officers but in those cases less than 4% of them resulted in any recommendation for punishment. Moreover, even in instances where civil juries found Chicago Police Officers violated the civil rights of citizens, investigations were not conducted and the police officers found liable were typically not punished.

51. Additionally, for the 5 year period prior to Plaintiff's arrest, 90 police officers were found liable in civil cases. In these cases, in which a civil jury heard a civil rights complaint for this time period, the evidence shows that *not a single officer was punished for conduct found to be a civil rights violation.*

52. Publicly available data also shows that between 2007 and 2012 (the year of Plaintiff's arrest), IPRA sustained allegations against officers 2.16% of the time. This is far below nationwide statistics on this issue.

53. Also, for the two years prior to and including Plaintiff's arrest, IPRA was understaffed and its investigators had unusually high caseloads. IPRA was not completing investigations involving complex matters.

54. The statistical information cited above is corroborated by the U.S Department of Justice investigation of CPD practices. In January 2017, The U.S. Department of Justice issued a report[1] based upon an extensive investigation into the practices of the Chicago Police Department. This report investigated misconduct during the years of January 2011 to January 2016. The report included the following findings:

   a. The City of Chicago's accountability systems for Chicago Police Officers contribute to a pattern or practice of unconstitutional conduct;[2]

   b. During the years of 2011 through 2016, the City received over 30,000 complaints of misconduct, but fewer than 2% were sustained;[3]

   c. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

   d. The City of Chicago does not investigate the majority of citizen's complaints that it is required by law to investigate; [4]

   e. Investigations into police misconduct are neither fair nor complete;[5]

---

[1] This report is 161 pages, so it is not attached here, but it can be found on the web at: https://www.justice.gov/opa/file/925846/download
[2] *See generally,* Justice Department Report at 7-10.
[3] Justice Department Report at 7.
[4] Justice Department Report at 8.
[5] *Id.*

9

    f.   The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct;[6]

    e.   The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct; and

    f.   The Chicago Police Department has numerous entrenched, systemic policies and practices that undermine police accountability.

55.    Also contributing to officers' lack of any fear of accountability is the Chicago Police Department's widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

56.    Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015 Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

57.    On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

    Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?

    Answer: The short answer is, yes.

58.    The individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any significant discipline against them.

---

[6] *Id.*, at 9.

59. Defendant Anthony Schulz has had a least 91 allegations of misconduct complaints filed against him, and not one has been sustained, and he has never been disciplined by the City of Chicago for any citizen complaint. For just the two years prior to his arrest of the Plaintiff, Schulz had at least 18 complaints for violations of citizen's civil rights.

60. Defendant Marco Bruno has had at least 37 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

61. Defendant Michael Mitchell has had at least 16 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

62. Prior to Plaintiff's arrest, the City of Chicago failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

63. As a matter of custom and practice, the City of Chicago refuses to take into consideration individual patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, OPS, IPRA and/or COPA will not consider those patterns and/or allegations if they are deemed unsustained.

64. The misconduct of the police is facilitated and encouraged by the systemic deficiencies in the investigation and failure to discipline officers who engage in misconduct. This is because of the failure of the CPD to conduct itself in a manner consistent with reasonable and generally accepted practices and the officers' perception that their unconstitutional acts will not lead to any consequence.

65. Plaintiff alleges that these customs, and practices, described above, were the moving force behind the violations of the Plaintiff's rights. Based upon the principles set forth in

<u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to Plaintiff as set forth above.

    **WHEREFORE,** the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That the individual Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiff's special damages;

3. That these same Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the Defendants other than City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff have such other and further relief as this Court may deem just and proper.

BY:    s/ Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiff
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY:    s/ Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiff
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efoxlaw.com