IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY MILAN,<br><br>      *Plaintiff,*<br><br>v.<br><br>CITY OF CHICAGO POLICE OFFICERS DETECTIVE ANTHONY SCHULZ, STAR NO. 887, MARCO PROANO, STAR NO. 9477, AND MICHAEL MITCHEL, STAR NO. 6099 and UNKNOWN AND UNNAMED CITY OF CHICAGO POLICE OFFICERS, AND THE CITY OF CHICAGO,<br><br>      *Defendants.* | Case No. 1:21-cv-00765<br><br>Honorable John F. Kness<br>Magistrate Gabriel A. Fuentes<br><br><br>JURY TRIAL DEMAND BY ALL DEFENDANTS |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

    1.    This action arises under the United States Constitution and Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331 and 1367.

**ANSWER:** The City admits that Plaintiff brings this action under 42 U.S.C. § 1983 to address the alleged deprivation of his rights under the Constitution. The City admits that at the present time this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1343, 1331 and 1367. The City denies liability to Plaintiff for any and all claims asserted in the Complaint.

    2.    Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

1

**ANSWER:** The City admits that venue is proper under 28 U.S.C. § 1391(b). The City denies that Plaintiff is entitled to any relief in this matter and denies that the City deprived Plaintiff of his rights secured by the U.S. Constitution.

## PARTIES

3. At all times herein mentioned, Plaintiff Gregory Milan ("Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this court.

**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4. At all times herein mentioned, Defendants City of Chicago Police Officers/Detectives Anthony Schulz, star no. 887 ("Schultz"), Marco Proano, star no. 9477 ("Proano"), and Michael Mitchel, star no. 6099 ("Mitchel") ("individual defendants" or "police defendants") and unknown and unnamed officers were employed by the City of Chicago Police Department were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

**ANSWER:** The City admits that Anthony Schulz, Marco Proano, and Michael Mitchel were employed by the City of Chicago, admit that each officer was acting under the color of law, and admit that they are being sued in their individual capacity. The City of Chicago makes no answer to allegations against "unknown and unnamed officers," and is without information sufficient to form a belief as to the truth of the allegations of this paragraph directed toward "unknown and unnamed officers." The City denies all additional allegations of misconduct in Paragraph 4.

5. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

**ANSWER:** The Defendant City of Chicago, on information and belief, admits the allegations in Paragraph 5.

## FACTUAL ALLEGATIONS

6. On or about June 8, 2012, Plaintiff was lawfully in his mother's residence located in Chicago, Cook County, State of Illinois.

**ANSWER:** The City denies the allegations in Paragraph 6.

7. On that day and place, the individual Defendants arrived to the residence where Plaintiff was located allegedly based upon a dispatch of a "shots fired" call.

**ANSWER:** The City denies the allegations in Paragraph 7.

8. The Defendants came to the door where Plaintiff was located and contacted the Plaintiff. The Plaintiff, who was unarmed was detained.

**ANSWER:** The City admits Plaintiff was detained. The City denies Plaintiff has accurately stated the chronology or the entirety of the events that occurred on the date of the incident. The Defendant City of Chicago deny the remaining allegations in Paragraph 8.

9. Thereafter, the Defendants searched the residence where Plaintiff was located without legal cause.

**ANSWER:** The City denies the allegations in Paragraph 9.

10. The Defendants located a gun in a basement crawl space of the house. They also allegedly recovered a holster.

**ANSWER:** Upon information and belief, the City admits the allegations in Paragraph 10.

11. Plaintiff was arrested and transported to the police station.

**ANSWER:** Upon information and belief, the City admits the allegations in Paragraph 11.

12. At the police station, Defendant Schulz claimed that he Mirandized the Plaintiff who then allegedly said as follows: "he got the gun from on top of a kitchen cabinet, he pointed it at [2 persons who had been in the residence], he pointed it at them, and told them to get the fuck away from him."

**ANSWER:** The City admits the allegations of this paragraph related to mirandizing Plaintiff. The City admits that Plaintiff made a statement. The City denies all remaining allegations in Paragraph 12.

13. The statement set forth in the previous paragraph was fabricated. Plaintiff did not say that or anything remotely similar to that to any Police Officer or Detective.

**ANSWER:** The City denies the allegations in Paragraph 13.

14. The Defendants also omitted other material things and fabricated other things, including that they found a holster on top of the television in the residence.

**ANSWER:** The City denies the allegations in Paragraph 14.

15. There was no probable or legal cause to arrest and prosecute the Plaintiff.

**ANSWER:** The City denies the allegations in Paragraph 15.

16. Plaintiff was charged with, among other charges, 2 counts of unlawful possession of a weapon with a firearm. He was found guilty of this charge in a bench trial on May 11, 2017 and sentenced to 6 years imprisonment.

**ANSWER:** The City admits Plaintiff was charged but denies Plaintiff has accurately stated the charges. Upon information and belief, the City admits the remaining allegations in Paragraph 16.

17. Plaintiff was imprisoned on these charges.

**ANSWER:** Upon information and belief, the City admits the allegations in Paragraph 17.

18. Thereafter, the Plaintiff undertook an appeal of the guilty verdict and on September 30, 2020, the Appellate Court reversed his conviction.

**ANSWER:** The City admits the allegations in Paragraph 18.

19. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained additional injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering in an amount to be ascertained.

**ANSWER:** The City denies the allegations in Paragraph 19.

20. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in amount to be ascertained according to proof at the time of trial.

**ANSWER:** The City denies the allegations in Paragraph 20.

21. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute, and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum of attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**ANSWER:** The City denies the allegations in Paragraph 21.

**COUNT I
WRONGFUL DETENTION
PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS**

22. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

**ANSWER:** The City restates and realleges each of its answers to preceding paragraphs, as though fully set forth herein.

23. In the manner described above, Defendants seized and unlawfully arrested and prosecuted the Plaintiff without probable cause or any lawful justification, in violation of the Fourth Amendment to the U.S. Constitution.

**ANSWER:** The City denies the allegations in Paragraph 23.

24. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

**ANSWER:** The City denies the allegations in Paragraph 24.

25. Plaintiff's arrest, imprisonment, and the finding of him guilty, until his conviction was reversed, was due to the actions of all the individual Defendants in that they worked with one another to fabricate a confession, they fabricated evidence in their police reports, they omitted and did not turn over material exculpatory evidence, and Defendant Schulz perjured testimony during the underlying criminal trial.

**ANSWER:** The City denies the allegations in Paragraph 25.

26. Further, to the extent that any Defendant did not directly participate in the unlawful actions described above, this Defendant(s) is liable for failing to protect the Plaintiff from the unlawful acts of other Defendants despite the reasonable ability to do so.

**ANSWER:** The City denies the allegations in Paragraph 26.

27. As a result of this misconduct, Plaintiff was injured, including a loss of liberty, emotional distress, and attorneys' fees.

**ANSWER:** The City denies the allegations in Paragraph 27.

### COUNT II
### VIOLATION OF DUE PROCESS
### PLAINTIFF AGAINST ALL THE INDIVIDUAL DEFENDANTS

28. Plaintiff re-alleges and incorporates all the previous paragraphs as though fully alleged at this place.

**ANSWER:** The City restates and realleges each of its answers to the preceding paragraphs, as though fully set forth herein.

29. As described more fully above, all of the Defendants, acting individually, jointly, and/or in a conspiracy, to deprive Plaintiff of his constitutional right to due process and right to a fair trial.

**ANSWER:** The City denies the allegations in Paragraph 29.

30. In the manner described more fully above, the Defendants fabricated false inculpatory statements, failed to turn over exculpatory evidence, falsified police reports and gave perjured testimony, thereby causing the wrongful persecution of Plaintiff. Absent this misconduct, the criminal prosecution could not and would not have been pursued.

**ANSWER:** The City denies the allegations in Paragraph 30.

31. The Defendants misconduct directly resulted in the unjust criminal prosecution and continuing wrongful incarceration of Plaintiff while he awaited trial in the Circuit Court of Cook County, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

**ANSWER:** The City denies the allegations in Paragraph 31.

32. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress, and anguish.

**ANSWER:** The City denies the allegations in Paragraph 32.

33. The misconduct described in this count was objectively unreasonable and undertaken intentionally, with malice and willful indifference to the Plaintiff's clearly established constitutional rights.

**ANSWER:** The City denies the allegations in Paragraph 33.

### COUNT III
### PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS AND THE CITY OF CHICAGO FOR MALICIOUS PROSECUTION

34. Plaintiff hereby incorporates and realleges all the previous paragraphs as though fully set forth at this place.

**ANSWER:** The City restates and realleges each of its answers to the preceding paragraphs, as though fully set forth herein.

35. The individual defendants commenced and caused there to be continued a criminal prosecution of the Plaintiff.

**ANSWER:** The City denies the allegations in Paragraph 35.

36. The individual defendants fabricated a confession, falsified reports against the Plaintiff and concealed exculpatory evidence, among other things, in causing and prosecuting criminal prosecution of Plaintiff.

**ANSWER:** The City denies the allegations in Paragraph 36.

37. The underlying criminal charges terminated in Plaintiff's favor in that his conviction was reversed on September 30, 2020.

**ANSWER:** The City denies the allegations in Paragraph 37.

38. The individual defendants acted with malice in doing the acts described above.

**ANSWER:** The City denies the allegations in Paragraph 38.

39. Plaintiff was damaged as a result of being maliciously prosecuted as he suffered a loss of liberty, payment of attorneys' fees for the underlying criminal case and suffered emotional distress in a sum to be ascertained.

**ANSWER:** The City denies the allegations in Paragraph 39.

40. The City of Chicago is liable to Plaintiff under the concept of *respondeat superior*.

**ANSWER:** The City denies the allegations in Paragraph 40.

41. As a result of the foregoing, all defendants are liable to the Plaintiff for malicious prosecution.

**ANSWER:** The City denies the allegations in Paragraph 41.

## COUNT IV
## PLAINTIFF AGAINST THE CITY OF CHICAGO FOR
## *MONELL* LIABILITY

42. Plaintiff incorporates and realleges all the previous paragraphs as though they were fully set forth at this place.

**ANSWER:** The City restates and realleges each of its answers to the preceding paragraphs, as though fully set forth herein.

43. The misconduct of the Chicago Police Department Detectives and Police Officers described above was undertaken because of and pursuant to the practice of the Chicago Police Department. As a matter of custom and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately investigate and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

**ANSWER:** The City denies the allegations in Paragraph 43.

44. As a matter of practice, prior to and including the time of Plaintiff's arrest, the Chicago Police Department facilitated the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police Officers accused of civil rights violations can be confident that neither the OPS, Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

**ANSWER:** The City denies the allegations in Paragraph 44.

45. The Chicago Police Department's faulty accountability systems contribute to a pattern and practice of unconstitutional conduct by Chicago Police Officers.

**ANSWER:** The City denies the allegations in Paragraph 45.

46. The accountability system has changed over time, but during the time period encompassed by the acts that are subject to this complaint and for a period of time at least 5 years prior and subsequent to the incident at issue in this complaint the entities tasked with investigating complaints against police officers included the Independent Police Review Authority (IPRA), the Civilian Office of Police Accountability (COPA), and the Bureau of Internal Affairs (BIA).

**ANSWER:** The City denies the allegations in Paragraph 46.

47. Previously IPRA, and starting in 2017 COPA, were/are both responsible for investigating various kinds of allegations including false arrests and unlawful searches. Depending on the alleged circumstances, the Bureau of Internal Affairs may also investigate allegations of false arrest and unlawful searches.

**ANSWER:** The City admits that IPRA, COPA and BIA each had authority to investigate alleged misconduct including alleged false arrests and unlawful searches. The City denies the remaining allegations in Paragraph 47.

48. The faulty accountability system is demonstrated statistically, in that the numbers of officers that were disciplined as a percentage of those who were alleged to have engaged in misconduct, were so low that police could not help being aware of those statistics and engaged in misconduct with little fear that there would be a consequence for their actions, thus leading to a custom, pattern and practice of violating the constitutional rights of citizens.

**ANSWER:** The City denies the allegations in Paragraph 48.

49. For at least 2 years prior to Plaintiff's arrest and 2 years subsequent, IPRA failed to conduct any investigation in over half of the complaints received. For example, between 2011 and 2014, 58% of complaints were not investigated.

**ANSWER:** The City denies the allegations in Paragraph 49.

50. For several years prior to Plaintiff's arrest, typically no investigations were conducted even when the City of Chicago settled claims against police officers for thousands of dollars. For example, from 2009 through 2015 the City of Chicago settled hundreds of lawsuits alleging misconduct against police officers but in those cases less than 4% of them resulted in any recommendation for punishment. Moreover, even in instances where civil juries found Chicago Police Officers violated the civil rights of citizens, investigations were not conducted and the police officers found liable were typically not punished.

**ANSWER:** The City denies the allegations in Paragraph 50.

51. Additionally, for the 5 year period prior to Plaintiff's arrest, 90 police officers were found liable in civil cases. In these cases, in which a civil jury heard a civil rights complaint for this time period, the evidence shows that *not a single officer was punished for conduct found to be a civil rights violation*.

**ANSWER:** The City denies the allegations in Paragraph 51.

52. Publicly available data also shows that between 2007 and 2012 (the year of Plaintiff's arrest), IPRA sustained allegations against officers 2.16% of the time. This is far below nationwide statistics on this issue.

9

**ANSWER:** The City denies the allegations in Paragraph 52.

53. Also, for the two years prior to an including plaintiff's arrest, IPRA was understaffed and its investigators had unusually high caseloads. IPRA was not completing investigations involving complex matters.

**ANSWER:** The City denies the allegations in Paragraph 53.

54. The statistical information cited above is corroborated by the U.S. Department of Justice investigation of CPD practices. In January 2017, The U.S. Department of Justice issued a report[1] based upon an extensive investigation into the practices of the Chicago Police Department. This report investigated misconduct between the years of January 2011 to January 2016. This report included the following findings:
   a. The City of Chicago's accountability system for Chicago Police Officers contribute to a pattern or practice of unconstitutional conduct;[2]
   b. During the years of 2011 through 2016, the City received over 30,000 complaints of misconduct, but fewer than 2% were sustained;[3]
   c. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;
   d. The City of Chicago does not investigate the majority of citizen's complaints that it is required by law to investigate;[4]
   e. Investigations into police misconduct are neither fair nor complete;[5]
   f. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct;[6]
   g. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct; and
   h. The Chicago Police Department has numerous entrenched, systemic policies and practices that undermine police accountability.

**ANSWER:** The City denies the allegations in Paragraph 54.

55. Also contributing to officers' lack of any fear of accountability is the Chicago Police Department's widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

**ANSWER:** The City denies the allegations in Paragraph 55.

56. Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8,

---

[1] This report is 161 pages, so it is not attached here, but it can be found on the web at: https://www.justice.gov/opa/file/925846/download
[2] *See generally*, Justice Department Report at 7-10.
[3] Justice Department Report at 7.
[4] Justice Department Report at 8.
[5] *Id.*
[6] *Id.,* at 9

10

2015, Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

**ANSWER:** The City denies the allegations in Paragraph 56.

57. On December 8, 2015 Mayor Emmanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:
> Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?
> Answer: The short answer is, yes.

**ANSWER:** The City lacks knowledge and information sufficient to form a belief regarding the truth of the allegations in Paragraph 57.

58. The individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any significant discipline against them.

**ANSWER:** The City denies the allegations in Paragraph 58.

59. Defendant Anthony Schulz has had at least 91 allegations of misconduct complaints filed against him, and not one has been sustained, and he has never been disciplined by the City of Chicago for any citizen complaint. For just the two years prior to his arrest of the Plaintiff, Schulz had at least 18 complaints for violations of citizen's civil rights.

**ANSWER:** The City admits that Anthony Schulz has never been disciplined by the City. The City denies the remaining allegations in Paragraph 59.

60. Defendant Marco Bruno has had at least 37 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

**ANSWER:** The City denies the allegations in Paragraph 60.

61. Defendant Michael Mitchell has had at least 16 misconduct complaints filed against him and has never been disciplined by the City of Chicago for any citizen complaint.

**ANSWER:** The City denies the allegations in Paragraph 61.

62. Prior to Plaintiff's arrest, the City of Chicago failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

**ANSWER:** The City denies the allegations in Paragraph 62.

63. As a matter of custom and practice, the City of Chicago refuses to take into consideration the individual patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, OPA, IPRA and/or COPA will not consider those patterns and/or allegations if they are deemed unsustained.

**ANSWER:** The City denies the allegations in Paragraph 63.

64. The misconduct of the police is facilitated and encouraged by the systemic deficiencies in the investigation and failure to discipline officers who engage in misconduct. This is because of the failure of the CPD to conduct itself in a manner consistent with reasonable and generally accepted practices and the officers' perception that their unconstitutional acts will not lead to any consequence.

**ANSWER:** The City denies the allegations in Paragraph 64.

65. Plaintiff alleges that these customs, and practices, described above, were the moving force behind the violations of Plaintiff's rights. Based upon the principles set forth in Monell v. New York City Department of Social Services, the City of Chicago is liable for all the harm done to Plaintiff as set forth above.

**ANSWER:** The City denies the allegations in Paragraph 65.

## AFFIRMATIVE DEFENSES

The City, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to Plaintiff's Complaint, states:

1. The City is immune from the imposition of punitive damages under federal law. Punitive damages cannot be imposed against a municipality in a § 1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee. 745 ILCS 10/2-102.

2. To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of Plaintiff as reflected in the public record, including but not limited to police reports and/or his

guilty plea, any verdict or judgment obtained by Plaintiff must be reduced by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case.

3. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that a Plaintiff has a duty to mitigate his damages.

4. The City is not liable to the extent that any individual officers are found to have acted outside the scope of their employment.

5. To the extent any individual employees of the City or its police department are not liable as alleged in the Complaint, the City would not be liable. 745 ILCS 10/2-109.

6. The City is not liable for any claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any laws unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

7. Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

8. Under the Illinois Tort Immunity Act, the City is not liable for any injury allegedly caused by instituting or prosecuting any judicial or administrative proceeding by the Defendant Officers within the scope of their employment, unless the employee acted maliciously and without probable cause. 745 ILCS 10/2-208.

9. Plaintiff's claims are barred by the applicable statutes of limitations.

10. As to any state law claim, the City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

11. Plaintiff's Complaint asserts claims that are barred by the doctrines of estoppel, judicial estoppel, and/or collateral estoppel to the extent applicable.

Dated: October 24, 2024

Respectfully submitted,

MARY B. RICHARDSON-LOWRY,
*Corporation Counsel for the City of Chicago*

/s/ *James P. Fieweger*
Special Assistant Corporation Counsel
James P. Fieweger
jpfieweger@michaelbest.com
Carolyn E. Isaac
ceisaac@michaelbest.com
Ashni B. Gandhi
ashni.gandhi@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
444 W. Lake Street, Ste. 3200
Chicago, IL 60606
(312) 222-0800

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on October 24, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused it to be served this day on all counsel of record who are registered to receive notices of electronic filing generated by the CM/ECF system.

By: */s/ James P. Fieweger*
James P. Fieweger
Special Assistant Corporation Counsel

One of the Attorneys for Defendants
*City of Chicago*